## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lamont A. Thompson, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>National Credit Adjusters, LLC, and Synergy Solutions, Inc.,<br><br>    Defendants. | Case No. 10-cv-2307 (SRN/FLN)<br><br><br>**AMENDED MEMORANDUM OPINION AND ORDER** |

Mark L. Vavreck, Martineau, Gonko & Vavreck, PLLC, 401 North 3rd Street, Suite 600, Minneapolis, MN 55401; Thomas J. Lyons and Thomas J. Lyons, Jr., Consumer Justice Center P.A., 367 Commerce Court, Vadnais Heights, MN 55127, for Plaintiff.

Brian A. Wood and Matthew D. Sloneker, Lind Jensen Sullivan & Peterson, PA, 150 South 5th Street, Suite 1700, Minneapolis, MN 55402, for Defendant National Credit Adjusters, LLC.

Brian D. Clark and Gregory J. Myers, Lockridge Grindal Nauen PLLP, 100 Washington Ave South, Suite 2200, Minneapolis, MN 55401-2179, for Defendant Synergy Solutions, Inc.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter came before the Court on Plaintiff Lamont A. Thompson's Motion for Partial Summary Judgment in his individual capacity against Defendant Synergy Solutions, Inc. (Doc. No. 67.)  For the reasons that follow, Plaintiff's Motion is granted.

## II.     BACKGROUND

Plaintiff Lamont A. Thompson, a resident of the state of Minnesota, incurred a consumer debt with Fast Cash Personal Loan.  (Am. Compl., Doc. No. 23, ¶ 7.)  Plaintiff defaulted on that debt sometime before September 2009 and Defendant National Credit Adjusters, LLC ("NCA") purchased Plaintiff's debt from Fast Cash Personal Loan.  (Id. ¶¶ 8–9.)

Around September 2009, Plaintiff received a letter titled "Message Alert" (the "Letter").  (Id. ¶ 11; Declaration of Thomas J. Lyons, Jr., Doc. No. 60 ("Lyons Decl.") ¶ 2, Ex. 1 at Depo. Ex. 8.)  It was addressed to Plaintiff and advised him that "an automated voice message has been left for you and needs to be retrieved by phone." (Lyons Decl. ¶ 2, Ex. 1 at Depo. Ex. 8.)  It also provided a toll free phone number for Plaintiff to "access the message and confirm receipt" using a "message ID" number identified in the Letter.  (Id.)  The Letter displayed a return address of "PO Box 3023, Hutchinson, KS 67504."  (Id.)  That address belongs to NCA.  (Aff. of Matthew D. Sloneker, Doc. No. 72 ("Sloneker Aff."), ¶ 3, Ex. A, Depo. of Shawn Gylling ("Gylling Depo.") at 26:17–20.)  The Letter did not identify NCA by name or explain that it was a communication by a debt collector.  (Lyons Decl. ¶ 2, Ex. 1 at Depo. Ex. 8.)

Defendant Synergy Solutions, Inc. ("Synergy") provided "skip-tracing" services for NCA from 2001 to July 2010 to obtain valid phone numbers for debtors so NCA could contact them.  (Am. Compl. ¶ 10; Gylling Depo. 6:5–12, 6:25–7:7; Sloneker Aff. ¶ 4, Ex. B, Depo. of Jim Welker ("Welker Depo.") at 9:16–17, 16:2–22.)  Synergy obtained consumers' phone numbers for NCA by sending consumers "mailers" identical to the

Letter that was sent to Plaintiff in this case.  (Welker Depo. 13:11–14:1.)  Synergy has no

record of NCA approving the Letter.  (Welker Depo. 45:15–46:24.)  NCA claims that it

was unaware of how Synergy obtained consumers' phone numbers.  (Gylling Depo.

28:9–18.)  It is not disputed, however, that NCA used Synergy's services to send the

Letter to Plaintiff.  (Aff. of Trista M. Roy, Doc. No. 13 ("Roy Aff."), ¶ 6, Ex. E at

Interrog. No. 4.)

Plaintiff filed his original Class Action Complaint on June 9, 2010, alleging that

NCA violated the FDCPA by sending him the Letter.  (Doc. No. 1.)  After learning

though discovery that Synergy was responsible for sending the letter, Plaintiff moved to

Amend the Class Action Complaint on May 9, 2011.  (Doc. No. 8.)  The Court granted

Plaintiff's motion on May 31, 2011, and the Plaintiff filed an Amended Class Action

Complaint adding Synergy as a defendant that same day.  (Doc. Nos. 21, 23.)  On August

26, 2011, Synergy moved to dismiss the Amended Class Action Complaint because it

alleged that Plaintiff had violated the statute of limitations.  (Doc. No. 34.)  The Court

issued an Order dated November 30, 2011, denying Synergy's motion to dismiss without

prejudice.  (Doc. No. 47.)

NCA filed a Motion for Summary Judgment on March 16, 2012, prior to the end

of discovery.  (Doc. Nos. 39, 49.)  Plaintiff and NCA later agreed that NCA would

withdraw its summary judgment motion until after discovery ended because Plaintiff

planned to bring a motion for summary judgment and class certification.  (Pl.'s Mem. of

Law in Supp. of Partial Mot. for Summ. J., Doc. No. 58 ("Pl.'s Mem."), at p. 9.)  NCA

contacted the Court on April 17, 2012 to withdraw its motion for summary judgment so

that all motions could be heard together.  (Doc. No. 54.)  On May 17, 2012, NCA filed a motion for summary judgment.  (Doc. No. 62.)  On May 18, 2012, Plaintiff filed a motion for partial summary judgment against NCA and Synergy and a motion for class certification.  (Doc. No. 66–67.)  The Court held a hearing on these motions on June 28, 2012 and took them under advisement.  (Doc. No. 81.)

On October 5, 2012, Plaintiff, on behalf of the putative class, informed the Court that he had reached a settlement agreement with NCA and was withdrawing his motions for class certification and partial summary judgment against NCA only.  (Doc. No. 82.)  That same day, NCA withdrew its summary judgment motion.  (Doc. No. 85.)  NCA and Plaintiff also filed a Joint Motion for Preliminary Approval of Class Action Settlement Agreement on October 5, 2012, on which the Court entertained oral argument on October 24, 2012.  (Doc. Nos. 83, 91.)  At the hearing, Plaintiff clarified that the only motion pending was the one brought in his individual capacity for partial summary judgment against Synergy.

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir.1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of

4

the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (citations omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. <u>Id.</u> at 323; <u>Enter. Bank</u>, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

### B.        Application of the Statute of Limitations to Plaintiff's Claims

Synergy argues that summary judgment is inappropriate because fact issues remain regarding whether Plaintiff's claims against it relate back to the filing of the original complaint. (Def. Synergy's Mem. in Response to Pl.'s Mot. for Partial Summ. J., Doc. No. 68 ("Synergy's Opp'n Mem."), at pp. 2–4.) The statute of limitations under 15 U.S.C. § 1692k(d) requires all actions be filed "within one year from the date on which the violation occurs." The statute of limitations under 15 U.S.C. § 1692k(d) is jurisdictional in the Eighth Circuit. <u>Mattson v. U.S. West Commc's, Inc.</u>, 967 F.2d 259, 262 (8th Cir. 1992).

The Federal Rules of Civil Procedure permit an amendment to relate back to the date the original complaint was filed when it "changes the party or the naming of the party against whom a claim is asserted" if (1) the party to be brought into the action through the amendment received notice of the action within 120 days after the original

complaint's filing such "that it will not be prejudiced in defending on the merits" and (2) that the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Courts have found that the addition of a defendant may also relate back, particularly where the confusion regarding the proper "party to be sued was at least in part the result of actions taken by [defendant]." Photolab Corp. v. Simplex Specialty, Co., 806 F.2d 807, 811 (8th Cir. 1986).

Whether an amended complaint relates back is a question of law to be determined by the Court. Shea v. Esensten, 208 F.3d 712, 720 (8th Cir. 2000) (stating whether an amended pleading relates back are "matters within the sound discretion of the trial court"); Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 932 (9th Cir. 2007) ("Whether an amended pleading relates back to an original pleading is a question of law."). The effect of relation-back is to treat an amendment as if it were filed on the "date of the original pleading." Fed. R. Civ. P. 15(c)(1). Rule 15(c) relation back does not violate a jurisdictional bar where the added defendant was in part responsible for the confusion or mistake which delayed its inclusion in the lawsuit. Photolab, 806 F.2d at 811.

The Court noted in its Order dated November 30, 2011, that to meet Rule 15(c) relation-back against Synergy, Plaintiff must establish through discovery: "(1) that Synergy had notice such that it would not be prejudiced in defending on the merits and (2) that Synergy knew or should have known that it should have been a party to this suit but for a mistake concerning its identity." (Doc. No. 47 at p. 7.)

The Court finds that Plaintiff has met these requirements.  Plaintiff filed his original complaint against NCA on June 9, 2010, because NCA's post office box address appeared in the Letter.  Plaintiff filed his amended complaint on May 31, 2011, after learning that Synergy was responsible for drafting and mailing the Letter.  Synergy received notice of this action in July 2010, which is less than 120 days after service of the original complaint.  See Fed. R. Civ. P. 15(c)(1)(C) (providing that to relate back, the notice must be within 120 days of service).  Indeed, in July 2010, NCA executives called Synergy's president and told him that they had been sued regarding the Letter that had been drafted and sent to debtors by Synergy.  (Gylling Depo. 50:6–22; Welker Depo. 16:2–22.)

While Synergy acknowledges that it had notice of the lawsuit, it argues that it never saw the original complaint and that there is no evidence that it "knew or should have known" that it would be a party to this lawsuit.  (Synergy Opp'n Mem. at p. 3.)  In Krupski v. Costa Crociere S. p. A., the plaintiff sued Costa Cruise related to injuries she sustained while on a cruise ship.  130 S. Ct. 2485, 2490 (2010).  The plaintiff alleged in her complaint that Costa Cruise "owned, operated, managed, supervised, and controlled" the ship on which she injured herself.  Id.  After discovery, Costa Cruise alleged that another entity named Costa Crociere was the proper defendant.  Id. at 2491.  The district court ultimately granted the plaintiff's motion to amend the complaint to include Costa Crociere.  Id.  Shortly thereafter, Costa Crociere moved to dismiss the amended complaint alleging that it did not relate back and was untimely.  Id.  The Supreme Court held:

> Because the complaint made clear that [plaintiff] meant to sue the company that "owned, operated, managed, supervised and controlled" the ship on which she was injured . . . and also indicated (mistakenly) that Costa Cruise performed those roles . . . Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only because of [plaintiff's] misunderstanding about which "Costa" entity was in charge of the ship—clearly a "mistake concerning the proper party's identity."

Id. at 2497.

Just as in <u>Krupski</u>, Plaintiff sued NCA under the mistaken belief that it sent the Letter. The basis for the original complaint was the Letter sent by Synergy on behalf of NCA. Synergy thus should have known that Plaintiff did not add it as a defendant in the complaint because he did not yet know about its involvement with the Letter. Such a lack of knowledge was reasonable given that only NCA's address was listed in the Letter. Synergy does not dispute that it was on notice of the lawsuit shortly after it was filed and that Plaintiff included Synergy as a defendant once he learned that Synergy had drafted and mailed the Letter. Accordingly, the Court determines that Plaintiff's amended complaint including Synergy as a defendant was timely under Rule 15(c).

### C.      Whether Synergy is a "Debt Collector" under the FDCPA

Synergy argues that whether it is a "debt collector" under the FDCPA is a fact question that cannot be resolved at a motion for summary judgment. (Synergy Opp'n Mem. at pp. 4–6.) The FDCPA defines "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

15 U.S.C. § 1692a(6). An entity must therefore comply with the FDCPA if it (1) is

principally in the business of debt collection or (2) regularly attempts to collect debts,

either directly or indirectly.  See Romine v. Diversified Collection Servs., Inc., 155 F.3d

1142, 1146 (9th Cir. 1998).  The determination of whether an entity falls within the

definition of "debt collector" for purposes of the FDCPA depends not on the entity's

organizational label, but rather on the nature of its activities.  See id. at 1149.  Courts

determine whether a party is a debt collector as a matter of law by applying the language

and purpose of the statute to the facts of the case.  See, e.g., Chomilo v. Shapiro,

Nordmeyer & Zielke, LLP, No. 06-3103, 2007 WL 2695795, at *3–6 (D. Minn. Sept. 12,

2007.)

 While Synergy is not a debt collector under the first prong of the FDCPA

definition, it is a closer question whether it regularly attempts to collect debts, either

directly or indirectly and therefore qualifies as a debt collector under the second prong.

In Romine, debt collector DCS gave Western Union the names and addresses of debtors

for whom it did not have phone numbers.  155 F.3d at 1143.  Western Union then sent

each debtor a telegram asking him to call a number and enter his own phone number for

identity confirmation.  Id.  Western Union then gave the confirmed phone numbers to

DCS.  Id. at 1144.  The court found that Western Union qualified as a "debt collector"

under the FDCPA.  Id. at 1149.  Since Western Union obtained telephone numbers

through deceptive means, and used a system to "catalyze debt collection," the court

determined that the entity's activities went "beyond mere information gathering or

message delivery" and were "of the type that the FDCPA was designed to deter."  Id. at

1147, 1149.  While Western Union argued that the court's ruling would "bring a host of

service providers within the statute's reach, including mailing services, private investigators, skip tracers, [and] online personal locator services," the court expressly reiterated its conclusion that such a determination "would depend upon the nature of the activities in the individual case." Id. at 1149.

The Court determines that Synergy is a "debt collector" as defined under the FDCPA. NCA contracted with Synergy to obtain debtors' telephone numbers. NCA gave Synergy names and addresses of debtors for whom it did not have phone numbers. Synergy sent each debtor a Letter asking him to call a phone number and enter his own identity confirmation. Synergy turned these confirmed phone numbers of debtors back over to NCA. Synergy drafted the Letter on behalf of NCA, mailed the Letter directly to consumers, and provided the confirmed number to NCA. The Court determines that, as in Romine, Synergy went well beyond performing administrative tasks for NCA and is a debt collector for purposes of the FDCPA.

### D.     Whether the Letter was deceptive under § 1692e(10)

Plaintiff next argues that the Court should determine that the Letter was a deceptive debt collection practice under 15 U.S.C. § 1692e(10). (Pl.'s Mem. at pp. 11–14.) The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Both Synergy and NCA testified that the purpose of the Letter was to obtain

consumers' telephone numbers to allow NCA to call them about their debts.  (Gylling Depo. 6:25–7:7; Welker Depo. 9:16–24, 13:11–14:1.)  The Letter was only sent to consumers for whom NCA had no valid phone number.  (Gylling Depo. 8:24–9:8.)  Accordingly, because the Letter was sent in an attempt to gain consumers' telephone numbers, it was a "means" to "obtain information concerning a consumer" under 15 U.S.C. § 1692e(10).

The only remaining issue is whether the "means" Synergy used to "obtain information concerning a consumer" was "deceptive."  Whether a communication is deceptive under the FDCPA is judged from the perspective of an "unsophisticated consumer."  Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000) (citation omitted).  This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder."  Id. at 874 (internal quotations and citations omitted).  It protects "the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters."  Id. at 874–75.  The standard is a practical one and asks what effect a debt collector's communication would have on an unsophisticated consumer.  Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1056 (8th Cir. 2002).

The Eighth Circuit has resolved the question of deceptiveness as a matter of law when no dispute exists over the content or purpose of a letter.  See, e.g., Duffy, 215 F.3d at 848 (holding that a debt collection letter was deceptive as a matter of law); see also, e.g., Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061 (9th Cir. 2011) ("In this

circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law.");

Avila v. Rubin, 84 F.3d 222, 229–30 (7th Cir. 1997) (finding that the debt collector's

letter was deceptive and a violation of the FDCPA as a matter of law).

The Court determines that the Letter sent by Synergy was deceptive as a matter of

law.  The Letter did not name the sender or disclose that it was from a debt collector.

Rather, the Letter only stated that the consumer had a voice message that "needs to be

retrieved by phone."  After calling the number to retrieve the voice message, the

consumer did not immediately learn whom he was calling or the purpose of the

communication.  Rather, the consumer was asked to enter a "message ID" from the

Letter.  The voice then stated that it was a message from NCA regarding the collection of

a debt.  By that time, however, the phone system had recorded the debtor's telephone

number and matched it to the consumer's account using the message ID number.  The

Court determines that an unsophisticated consumer would not know, upon receiving the

Letter, that the purpose of the communication was an attempt to collect a debt.

Therefore, the Court determines that the Letter violated § 1692e(10).

### E.     Whether the Letter Violated 15 U.S.C. § 1692e(11)

Section 1692e(11) requires a debt collector to state that it is a debt collector in all

communications with consumers.  See 15 U.S.C. § 1692e(11).  Specifically, 15 U.S.C.

§ 1692e(11) states:

> [T]he following conduct is a violation of this section . . . The failure to
> disclose in the initial written communication with the consumer and, in
> addition, if the initial communication with the consumer is oral, in that
> initial oral communication, that the debt collector is attempting to collect a
> debt and that any information obtained will be used for that purpose, and

the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.[1]

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Courts recognize that whether a "communication" has been made is a context-specific inquiry. Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) ("[T]he purpose and context of the communications—viewed objectively—are important factors.").

In Foti v. NCO Financial Systems, Inc., the court held that the following recorded telephone message was a "communication" under § 1692a(2): "Good day, we are calling from NCO Financial Systems regarding a personal business matter that requires your immediate attention. Please call back 1–866–701–1275 once again please call back, toll-free, 1–866–701–1275, this is not a solicitation." 424 F. Supp. 2d 643, 648, 659 (S.D.N.Y. 2006). Since the FDCPA "should be broadly construed," the court found it "difficult to imagine how the voicemail message is not a communication under the FDCPA" when it "clearly provided some information, even if indirectly, to the intended recipient" and its "obvious purpose . . . was to . . . entice a return call." Id. at 655–56. Courts in the District of Minnesota have adopted Foti's reasoning. See, e.g., Mark v. J.C. Christensen & Assocs., Inc., No. 09-100, 2009 WL 2407700, at *3 (D. Minn. Aug. 4, 2009).

---

[1]    In 1996, Congress amended 15 U.S.C. § 1692e(11) to state that debt collectors must disclose that they are debt collectors in all communications subsequent to the debt collector's initial communication. See Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-205, § 2305, 110 Stat. 3009 (1996); see also Schwarm v.

The Court finds that the Letter was a communication under the FDCPA.  The Letter advised, "an automated voice message has been left for you and needs to be retrieved by phone."  It provided a phone number to call and a "message ID" number needed to access the message.  The Letter did not disclose that it was sent by a debt collector.  As in <u>Foti</u> and <u>Marks</u>, the purpose of the Letter was to provide the consumer with enough information to entice a return call.  These cases establish that a debt collector cannot seek a return call—as Synergy did here—without disclosing its status as a debt collector.  As such, the Letter violated 15 U.S.C. § 1692e(11).

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Defendant Synergy Solutions, Inc. (Doc. No. 67) is **GRANTED.**


Dated: October 31, 2012            s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Judge

---

<u>Craighead</u>, 552 F. Supp.2d 1056, 1082 n.18 (E.D. Cal. 2008).